DAVID ALDRIDGE, as Superintendent of the Poor of Oneida County, Respondent, *v.* MARY WALKER, Appellant.

1. POOR PERSON — ORDER REQUIRING PAYMENT FOR SUPPORT TO COUNTY BY RELATIVE. The force of an order of a Court of Sessions requiring a relative to pay a certain sum per week to the county superintendent of the poor for the support of an alleged dependent poor person until the further order of the court, is terminated by the termination of the person's dependency upon the public for support, as, by a discharge from the poorhouse, followed by self-support.

2. RES ADJUDICATA — TERMINATION OF ORDER FOR PAYMENT FOR SUPPORT. The doctrine of *res adjudicata* does not preclude the defendant, in an action brought by a superintendent of the poor to recover upon an order of the Court of Sessions requiring a relative to pay a certain sum per week to the superintendent for the support of an alleged dependent poor person until the further order of the court, from showing, as a defense, that the dependency of the poor person upon the county had been terminated by a discharge from the poorhouse followed by self-support, and that the sum accrued for the period during which the county had cared for the poor person had been in fact fully paid, so that nothing was due and owing at the commencement of the action, although the poor person was at that time in the poorhouse by recommitment.

3. DELAY OF SUPERINTENDENT IN DECIDING UPON RELATIVE'S OFFER OF SUPPORT. A relative of an alleged dependent poor person is not to be held liable, under an order of the Court of Sessions requiring the payment of a certain sum per week to the superintendent of the poor for the support of the poor person, for the period of the superintendent's delay and neglect to decide upon the sufficiency of a really sufficient offer, subsequently accepted by him, of the relative to personally take and care for the poor person.

*Aldridge, Supt., etc.,* v. *Walker,* 82 Hun, 614, reversed.

(Argued December 24, 1896; decided January 26, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the fourth judicial department entered December 14, 1894, which modified and, as modified, affirmed a judgment in favor of plaintiff entered upon a decision of the Oneida County Court on a trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*S. M. Lindsley* for appellant. The Court of Sessions had no jurisdiction to make the order of April fourth, and it is, therefore, not binding. (Herman on Res Adjudicata, §§ 59, 69, 458 ; *Bigelow* v. *Stearns*, 19 Johns. 40 ; Code Crim. Pro. § 915 ; L. 1846, ch. 245 ; *In re Weaver* v. *Benjamin*, 45 N. Y. S. R. 95 ; *Osterhoudt* v. *Rigney*, 98 N. Y. 236 ; *Stone* v. *Burgess*, 2 Lans. 439 ; *People ex rel.* v. *Board of Suprs.*, 103 N. Y. 541 ; *Tillotson* v. *Smith*, 12 N. Y. S. R. 331.) The validity of the order, for want of jurisdiction, may be attacked. (*Ferguson* v. *Crawford*, 70 N. Y. 253 ; Herman on Res Adjudicata, § 458.) The validity of the order is not *res adjudicata*. (70 N. Y. 253 ; Herman on Res Adjudicata, §§ 458, 472 ; *Dwight* v. *St. John*, 25 N. Y. 205 ; *In re Flushing Avenue*, 98 N. Y. 445 ; *In re Spelman* v. *Terry*, 74 N. Y. 448 ; *Chapman* v. *P. Nat. Bank*, 85 N. Y. 437 ; 129 N. Y. 666 ; *Easton* v. *Pickersgill*, 75 N. Y. 599 ; *Mack* v. *Patchin*, 29 How. Pr. 29 ; *Simson* v. *Hart*, 14 Johns. 63 ; *Arden* v. *Patterson*, 5 Johns. Ch. 52.) Even if the order be valid, the superintendent of the poor cannot maintain an action upon it. (*Duel* v. *Lamb*, 1 T. & C. 66 ; *In re Weaver* v. *Benjamin*, 45 N. Y. S. R. 95 ; *Stone* v. *Burgess*, 2 Lans. 439.) The order directing the defendant to make payments is insufficient and void on its face. (*Gilbert* v. *York*, 111 N. Y. 544 ; Code Crim. Pro. §§ 914, 915, 916 ; *Duel* v. *Lamb*, 1 T. & C. 69 ; *In re Weaver* v. *Benjamin*, 45 N. Y. S. R. 95 ; *Converse* v. *McArthur*, 17 Barb. 410.) No cause of action existed when the suit was commenced ; therefore, there should have been no recovery. (Code Crim. Proc. § 914 ; 1 Am. & Eng. Ency. of Law, 180 ; *Hare* v. *Van Deusen*, 32 Barb. 92 ; *McCullough* v. *Colby*, 4 Bosw. 603 ; *Watson* v. *Thibou*, 17 Abb. 184 ; *Buchanan* v. *Comstock*, 57 Barb. 582 ; *Smith* v. *Aylesworth*, 40 Barb. 104.) The superintendent of the poor discharged Sarah Walker from his custody July 10, 1886, and thereby severed his official relations with her, retaining no control over her or care of her from that time (1 R. S. 624, § 41.) The judgment is wrong, because Sarah, without fault of her mother, this

defendant, voluntarily left the comfortable home provided for her, where defendant was always ready and willing to support her in a manner suitable to the condition of the parties, and as well as defendant was bound to provide. (*Duel* v. *Lamb*, 1 T. & C. 69; *Converse* v. *McArthur*, 17 Barb. 411.) So long as a relative, who has been ordered by the Court of Sessions to support a poor person, is ready and willing to support the pauper in a satisfactory manner, he is not liable for the money. (*Duel* v. *Lamb*, 1 T. & C. 68; *Converse* v. *McArthur*, 17 Barb. 410; *In re Weaver* v. *Benjamin*, 45 N. Y. S. R. 95.) A new trial could not change the legal position of the parties; therefore, the judgment should be reversed, and judgment ordered for the defendant dismissing the complaint, with costs. (*Covart* v. *Johnston*, 40 N. Y. S. R. 62; 15 N. Y. Supp. 785; 137 N. Y. 560.)

*Timothy Curtin* for respondent. The appeal in this case being upon the judgment roll, the evidence not being presented, the only question to be determined is whether the conclusions of law are warranted by the facts found. (*Stoddard* v. *Whiting*, 46 N. Y. 627–631; *Tomlinson* v. *Mayor*, etc., 44 N. Y. 601; *Corner* v. *Mackey*, 147 N. Y. 574–580; *A. Ins. Co.* v. *Barnard*, 96 N. Y. 525.) The judgment will not be reversed because the trial court made numerous findings of fact and conclusions of law which are wholly irrelevant. (61 Hun, 618; 39 N. Y. S. R. 986.) The validity of the order was *res adjudicata.* (*People* v. *Street*, 38 N. Y. S. R. 801; *Culross* v. *Gibbons*, 130 N. Y. 447; *Ashton* v. *City of Rochester*, 133 N. Y. 197; *Baldwin* v. *McArthur*, 17 Barb. 414; *Embury* v. *Conner*, 3 N. Y. 511–522; *Paige* v. *Fazackerly*, 36 Barb. 392.) The provisions of the Livingston County Act have no application to this case. (*Tillotson* v. *Smith*, 12 N. Y. S. R. 332.) It will be presumed that the orders in question were regular and valid. (*People* v. *Bradner*, 107 N. Y. 1; Code Crim. Pro. §§ 914–926; *Wright* v. *Nostrand*, 94 N. Y. 45.) The recovery is intended for the support of the

poor person for whose maintenance the order is made. (*In re Weaver* v. *Benjamin*, 45 N. Y. S. R. 97.) If any facts existed which made it improper or unjust to require the defendant to comply with the order, her remedy was by a motion to the Court of Sessions to vacate and modify it under section 918 of the Code of Criminal Procedure. (*In re Walker*, 61 Hun, 618; 129 N. Y. 666.)

HAIGHT, J.  This action was brought to recover for the support and maintenance of Sarah Walker, the daughter of the defendant.  The action is based upon an order of the Court of Sessions of Oneida county, bearing date April 4th, 1887, as modified by another order of that court, bearing date June 17th, 1887, wherein the defendant, as mother of Sarah Walker, was required to pay to the superintendent of the poor of the county of Oneida the sum of three dollars per week for the support and maintenance of Sarah Walker until the further order of that court.

The conclusions of law based upon the findings of facts by the trial court only are brought up for review.  It appears from the facts found that Sarah Walker was committed to the Oneida county poorhouse, as a poor person, on the 18th day of May, 1886, and that she was duly discharged therefrom by the superintendent of the poor on the 10th day of July thereafter; that she then obtained employment in a private family and supported herself until the 20th day of May, 1891, at which time she was again committed to the county house by the overseer of the poor of the town of Rome, where she remained until the 20th day of June thereafter; she was then discharged and again committed to the county house by the same overseer of the poor on the 21st day of November, 1891, where she remained until the trial of this action.  On the 23d day of June, 1886, the then superintendent of the poor of the county of Oneida caused a notice to be served upon the defendant, to the effect that he would apply to the Court of Sessions of that county on the 6th day of December, 1886, for an order compelling her to support her said daugh-

ter. It further appears that this motion was brought on for a hearing in the Court of Sessions on the 4th day of April, 1887, the defendant failing to appear; an order was made providing that she should pay six dollars for each and every week after the date of the order, until the further order of the court, to be used exclusively for the support and maintenance of her daughter Sarah after that date. Upon an application made therefor by the defendant, this order was opened upon her paying the sum of one hundred and fifty-five dollars, and she was given a hearing thereon; whereupon the order of June 17th, 1887, was made, reducing the weekly allowance from six dollars to three dollars. Thereafter the defendant paid, from time to time, the amount required to be paid by that order, until the 29th day of May, 1888, as we are now told, upon the supposition that her daughter Sarah was still an inmate of the county house; she then refused to pay more; and subsequently, and on the 18th day of November, 1890, this action was brought. It further appears from the facts found that, in the year 1859, the supervisors of Oneida county, by resolution duly passed, adopted the provisions of the "Livingston County Act," relating to the support of the poor, and thereupon the provisions of chapter 334 of the Laws of 1845 were extended to Oneida county, and that the same has ever since been in force in that county; and that all the poor of Oneida county were not a charge upon the county when any of the proceedings were had to compel the defendant to support her daughter Sarah.

It will be observed, from the facts narrated, that a question is presented — as to whether this action can be maintained by the superintendent of the poor. The orders of the Court of Sessions, upon which it was based, were made after Sarah had been discharged from the county house by the superintendent of the poor, and at a time when he had no jurisdiction or control over her. That order required the defendant to pay the sum stated per week, from and after the 4th day of April, 1887, at which time, and for several years thereafter, Sarah continued to support herself, and was not a charge upon the

county or upon any town therein. It is claimed that it does not appear that Sarah was ever insane, blind, old, lame, impotent or decrepit so as to be unable to work and maintain herself, and that she, consequently, was not a person within the provisions of section 914 of the Code of Criminal Procedure, and, hence, that her mother could not properly be charged with her support. Upon this branch of the case the trial court has found, as a conclusion of law, that the superintendent of the poor of the county was not authorized to institute the proceedings to compel the defendant to support her daughter Sarah; but, for the purposes of this case, we shall disregard this conclusion of the trial court, pass the consideration of the questions raised with reference to the jurisdiction of the court, and assume that all of the questions raised with reference thereto are *res adjudicata.*

Upon the merits the case is, moderately speaking, extraordinary. Sarah was committed to the county house on the 18th of May, 1886, and remained until July 10th — seven weeks and three days; she was then discharged by the superintendent, and from that time until May 20th, 1891, supported herself and was not a public charge to the amount of a single penny; she then became an inmate of the county house for one month and was again discharged, and was again committed on the 21st day of November, 1891. The order of the Court of Sessions made no provision for reimbursing the county for the seven weeks and three days in which she was an inmate of the county house during the year 1886. It provided for her support after the 4th day of April, 1887, by requiring a weekly payment to be used exclusively for her support and maintenance thereafter. The defendant paid one hundred and fifty-five dollars on the 17th day of June, 1887, being the costs and weekly payments accrued upon the former order to that date, and then paid the three dollars per week, required by the order of the latter date, until the 29th day of May, 1888, making a total of upwards of three hundred dollars, not a dollar of which had thereafter been expended for her support and maintenance by the superintendent prior to the

commencement of this action. The trial court awarded judgment for the sum of eight hundred and eighty-seven dollars and thirteen cents, being three dollars per week from the 29th day of May, 1888, to the 29th day of January, 1894, the time of the trial, which judgment was reduced by the General Term to the sum of seven hundred and eight dollars, besides costs, thus limiting the recovery to the 12th day of December, 1892, the day on which the superintendent approved of the defendant's home as a suitable place for the residence of her daughter Sarah. From the 21st day of November, 1891, the date of her last commitment, to the 12th day of December, 1892, the date to which recovery was permitted, was one year and twenty-one days. It thus appears that the superintendent of the poor has received upwards of three hundred dollars and a judgment of upwards of seven hundred dollars for one year, one month and twenty-one days' actual support of the defendant's daughter in the county house, which, at three dollars per week, would not amount to the sum of two hundred dollars, leaving a considerable amount of the sum already paid by the defendant unexpended. The question is thus presented as to whether the superintendent can recover of the defendant for the five years intervening between the making of the order and the commitment of Sarah in 1891. The General Term appears to have been of the opinion that the order of the Court of Sessions was *res adjudicata,* and that no defense was available to the defendant except that of payment. We think this is carrying the doctrine of *res adjudicata* beyond its legitimate scope. Suppose that Sarah had died on the next day after the making of the order, thus terminating her dependency upon the public for her support, is it possible that that fact could not be shown, and would the courts be bound to award judgment against her mother for the support of her daughter years after she was dead? And if her death could be shown as a termination of her dependency upon the county for her support, why may not the order of the superintendent, discharging her as an inmate of the county house, and her thereafter supporting

herself, be shown? Her dependency upon the county may be terminated in either of the ways pointed out; and when terminated, the superintendent has no further charge or liability with reference to her. The object and purpose of the order of the Court of Sessions thereupon cease and determine. There is no necessity for its longer continuance or for its execution; and it appears to us that no reason exists in law or equity for the enforcement of such an order, after the happening of such an event. If this be so, there was nothing due and owing from the defendant to the plaintiff at the time this action was brought. It is true that in an action brought under section 920 of the Code of Criminal Procedure, a recovery can be had down to the time of the trial, but this has reference only to actions in which there is some amount due and owing at the time the action was brought.

It is stated that Sarah Walker was forty-five years of age. It is found as a fact that the defendant lived on a farm in the town of Deerfield, in the county of Oneida, and has kept house there for many years; that prior to the year 1885 Sarah lived with her mother on the farm; that she had to herself a comfortable room, suitably furnished, and was provided with such fare as the defendant provided for herself and her household; that during the year 1885 Sarah voluntarily left her home and went to the town of Rome, where she remained until she went to the poorhouse, in May, 1886; that the home, support and maintenance provided by the defendant for Sarah was comfortable and suitable to the conditions of the parties, and as good as the defendant was bound to provide; that in July, 1891, the defendant caused notice in writing to be served upon the superintendent of the poor to the effect that she was ready and willing to provide suitably and properly for Sarah at her own home, and forbidding him to expend anything, or incur any expense in the matter of her support or maintenance; but to this notice the superintendent made no response; that on the 12th day of December, 1892, the defendant again offered to take her daughter home and provide for her in a suitable and sufficient manner;

and that the plaintiff thereupon told defendant to take her, and thereby approved of the defendant's home as a suitable place for her support and maintenance.   The General Term, as we have seen, modified the judgment entered upon the decision of the trial court, in effect holding that the recovery should be limited to the 12th day of December, 1892, thus, in effect, recognizing the rule that we contend for — that other defenses may be available than that of payment.   But we have called attention to these findings for another purpose. It is not quite apparent to us why the 12th day of December, 1892, should be selected as the date for the termination of the order of the Court of Sessions, instead of the earlier date.   The defendant had furnished her daughter with a home, with all the comforts suitable to her condition in life, prior to the time that her daughter left.   In July, 1891, she called the superintendent's attention to this, through her written notice of that date, and expressly stated that she was willing to provide for and support her daughter at her own house.   This cast upon the superintendent the duty of determining whether her offer was suitable and sufficient; this he did determine a year or more later; but she ought not to be held responsible for his delay and neglect in the meantime.

It is quite apparent, for the reasons stated, that this judgment ought not to be permitted to stand; and so fully are we convinced that the claim has no merit that we think it our duty to here finally dispose of the case.

The judgment should be reversed and the complaint dismissed, with costs.

All concur, except O'BRIEN, J., not voting, and MARTIN, J., not sitting.

Judgment accordingly.